IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: ) | Dist. Co. No. 07-1246-WEB |
| ) | (Bktrcy. No. 05-17429) |
| GARY E. KRAUSE, ) | (Chapter 7) |
| ) | (Adversary No. 05-5775) |
| Debtor. ) | |
| ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Appellee, ) | |
| and ) | |
| ) | |
| LINDA S. PARKS, Trustee, ) | |
| ) | |
| Intervener/Appellee, ) | |
| ) | |
| v. ) | |
| ) | |
| GARY KRAUSE and RICHARD KRAUSE, ) | |
| ) | |
| Defendants, ) | |
| and ) | |
| ) | |
| DRAKE KRAUSE and RICK KRAUSE, ) | |
| ) | |
| Interveners/Appellants. ) | |
| ) | |

**Memorandum and Order**

Drake Krause and Rick Krause, interveners in an adversary proceeding in Bankruptcy Court (hereinafter "Interveners"), seek to appeal a ruling of the Bankruptcy Court imposing sanctions on the debtor, Gary E. Krause. The sanctions imposed by the court included a partial default judgment against the debtor declaring certain trusts and business entities to be the nominees or alter ego of the debtor and thus property of the bankruptcy estate and subject to turnover. The Interveners claim an interest in one or more of the trusts affected by the order.

Trustee Linda Parks has filed a motion to dismiss the appeal for lack of jurisdiction or, alternatively, to transfer the appeal to the Bankruptcy Appellate Panel (BAP).  The appellants have responded and have filed a motion of their own asking the court to stay enforcement or execution of the Bankruptcy Court's sanction order pending resolution of the instant appeal.

I. Background.

The following is a brief summary of the case background.  The United States and the Trustee brought adversary complaints against the debtor, Gary Krause, alleging that certain trusts and entities were in fact nominees or shams controlled by the debtor, and were therefore subject to the United States' substantial tax lien and subject to turnover for the benefit of estate's unsecured creditors.  Early on in the proceeding, the Bankruptcy Court granted a preliminary injunction freezing the assets of certain of these trusts and enjoining the debtor from using, transferring, or depleting any of the assets.

In February of 2006, the United States served debtor with requests for production of documents, including files or information on computer, related to its complaint.  After an initial production of documents by debtor, the debtor testified in the course of a hearing on June 15, 2006, that he had accounting records for the trusts and entities on his computer.  The United States thereafter filed a motion to compel alleging that debtor had additional responsive documents in his control.  On September 18, 2006, the Bankruptcy Court ordered debtor to produce the computer files by September 29 and warned him he would be subject to sanctions if he failed to do so.  After the debtor filed a motion for clarification, additional hearings were held, and the Bankruptcy Court eventually ordered debtor to turn over his computers by October 23, 2006.  Debtor turned over the computers on October 17, 2006.

On February 7, 2007, the Trustee filed a motion for sanctions that alleged the debtor had engaged in the destruction of evidence from his computers.  The motion sought sanctions up to and including the entry of default judgment on the Trustee's claims.  On February 22, 2007, the Bankruptcy Court granted a previously-filed motion to intervene by the debtor's sons, Drake Krause and Rick Krause, who claimed an interest in the some of the trusts at issue in the adversary proceeding.  On February 27, 2007, the United States filed a motion for default judgment and to have the debtor held in contempt for his alleged knowing violation of the Bankruptcy Court's orders compelling him to turn over discovery materials.

The Bankruptcy Court held evidentiary hearings on March 22-23, 2007, and April 12, 2007.  On June 4, 2007, the Bankruptcy Court filed a 61-page order finding that the debtor had willfully and intentionally destroyed electronically stored evidence from his computers through use of a security software program called "GhostSurf."  (Adv.  Doc. 314).  The Court further found the debtor had willfully violated court orders, including the preliminary injunction and an asset disclosure order.  The Court found the conduct warranted the severest of sanctions, including "partial default judgment ... against Krause on the Trustee's and Government's complaints, determining that the Gary E. Krause Trust, the Krause Irrevocable Family Trust, FIMCO and Federal Gasohol Corporations are the nominees or the alter ego of Krause and are thus property of the estate and subject to turnover." *Id.* at p. 59.  It further ordered that within ten days the debtor must turn over additional materials, including other computers and an alleged back-up copy of his computer contents, and that if he failed to do so default judgment would be granted with respect to additional entities and a bench warrant would be issued and he would be incarcerated until he complied with the order.  *Id*. at 59-60.

On June 14, 2007, intervener Drake Krause filed a motion asking the Bankruptcy Court to reconsider its ruling. (Adv. Doc. 331). Also on June 14, 2007, debtor Gary Krause filed a *pro se* Notice of Appeal of the decision and an election to have the appeal heard by the Bankruptcy Appellate Panel. (Adv. Docs. 334, 335). Debtor also filed a motion asking the Bankruptcy Court to stay its order pending appeal. (Adv. Doc. 336).

On June 21, 2007, the BAP issued a "NOTICE THAT APPEAL HAS BEEN DOCKETED (PREMATURE APPEAL). The notice said the appeal had been docketed and assigned a BAP number, and that "[p]rovided no timely election is filed, this appeal will proceed before the BAP." It further said the appeal appeared premature in view of the pending motion for reconsideration in the Bankruptcy Court, and that further proceedings on appeal were suspended until the motion was ruled on by the Bankruptcy Court.

On August 14, 2007, the Bankruptcy Court issued an order denying the interveners' Motion to Reconsider the sanctions order. (Adv. Doc. 377). In denying the motion for reconsideration, the Bankruptcy Court found that the Interveners' rights were not abridged in any material way by the court's judgment.[1] On August 20, 2007, the Interveners filed a Notice of Appeal to the U.S. District Court (Adv. Doc. 382), together with an Election to Appeal to the

---

[1] The court noted that Gary Krause, rather than his sons, was the beneficiary of the Krause Family Trust and the Gary E. Krause Trust. The court said that the sons' interest in these trusts was contingent at best. As for the entities FIMCO and Federal Gasohol, the court said the fact that these entities paid the bills of Gary and his sons did not give the sons a substantive right in the assets of the companies. As for Drake Enterprises, Inc., the court said it had heard evidence that this entity had no assets. And finally, the court said that PHR, LLC nominally owned the Oneida property by virtue of a deed from the Childrens Trust I after the Government initiated a collection action, but there was no documentary evidence of Drake Krause having any substantive right in these entities, and even if he did it would be derived from his father's interests and subject to the same encumbrances.

4

District Court (Adv. Doc. 383) and a Motion to Stay the Sanctions Order Pending the Appeal (Adv. Doc. 380).

Two additional matters were also filed on August 20, 2007.  First, the BAP issued an Order to Show Cause why the appeal before it should not be dismissed as interlocutory.  (Adv. Doc. 385).   Second, debtor Gary Krause filed a Notice of Provisional Claim of Homestead Exemption, which asserted that in light of the Bankruptcy Court's declaration that he had an interest in the real property located at 7711 Oneida Court, Wichita, Kansas, debtor was provisionally claiming the property under the Kansas homestead exemption.

II. <u>Motion to Dismiss Appeal</u>.

The Trustee moves to dismiss or transfer the appeal on three grounds.  First, the Trustee argues the sanction order is not a final appealable order because it did not dispose of all claims and issues in the adversary proceeding.  Second, the Trustee argues the Interveners' election to proceed in the district court was filed out of time, such that jurisdiction over the appeal resides only in the BAP.  The Trustee contends the Interveners were required to file their notice of election to the district court within 30 days of the debtor's initial Notice of Appeal.  Third, the Trustee argues the Interveners lack standing to prosecute the appeal.  The Trustee contends the Interveners have no interest in four of the entities affected by the Bankruptcy Court's order of partial default judgment, and as to the two affected trusts in which they claim an interest (the Krause Irrevocable Family Trust and the Gary E. Krause Trust), the Trustee contends debtor Gary Krause is named the beneficiary and the Interveners are only contingent remainder beneficiaries of these trusts.  The Trustee thus contends the Interveners' interest is too remote to confer standing to appeal the order.

The Interveners challenge each of these arguments. They contend the Bankruptcy Court's order is either a "final order" within the meaning of the statute or it is otherwise appealable because as a practical matter is disposes of the assets in question. The Interveners point out that the Trustee has demanded the debtor surrender the residence located on Oneida Court. They contend the bankruptcy court's order has decisively resolved the status of this asset as it relates to the estate, such that there is nothing left but for the Trustee to execute on the judgment by evicting the Interveners from the residence. The Interveners contend the order will be effectively unreviewable on appeal if they are required to wait for a final judgment on all claims. With regard to the Trustee's argument that their election to the district court was untimely, Interveners argue that Gary Krause's appeal does not impact upon their appeal. They argue they are entitled to file their own appeal and select the court in which they wish to proceed, and that they were not required to elect while the motion for reconsideration was pending in the Bankruptcy Court. Lastly, with regard to the Trustee's standing argument, Interveners claim that they have enforceable interests in the entities effected by the Bankruptcy Court's order, including homestead rights in the Oneida residence. They contend that the entity PHC, LLC is the separate property of the various Children's Trusts established by the debtor, created for the purpose of taking title to the property held in trust so as to allow a tax-free exchange for a new residence for the Interveners. They say would be able to show the extent of such interests, but point out that the hearings below were focused not upon the merits of the validity of these trusts, but upon debtor's alleged failure to abide by discovery orders. Interveners argue that they have enforceable rights in these entities that were violated by the sanctions order, such that they have standing to appeal the ruling.

III.  Discussion.

A.  *Timeliness of Interveners' Election to Proceed in District Court*.

Section 158(a) of Title 28 sets forth the general jurisdiction of the district courts to hear appeals from orders of the bankruptcy courts.  Subsection 158(c) provides in part that all appeals under § 158(a) shall be heard by the Bankruptcy Appellate Panel "unless ... the appellant elects at the time of filing the appeal" or "any other party elects, not later than 30 days after service of notice of the appeal... to have such appeal heard by the district court." § 158(c)(1)(A) & (B).[2] An appeal must be taken within the time prescribed by Bankruptcy Rule 8002. § 158(c)(2).

The Trustee contends the Interveners' election to proceed in the district court was untimely because service of notice of the debtor's Notice of Appeal on June 14, 2007 triggered the 30-day period in § 158(c)(1)(B) for "any other party" to make its election.  Interveners did not file an election to proceed in the district court until August 14, 2007, when they filed their own Notice of Appeal.  At first glance the Trustee's argument appears to have merit, because there is case law supporting the proposition that the filing of a premature notice of appeal can nevertheless serve to trigger the 30-day election period in § 158(c)(1)(B).  *See HBI, Inc. v. Sessions Payroll Mgmt., Inc. (In re Mackey)*, 232 B.R. 784 (9th Cir. BAP 1999).  But because the Interveners here are *appellants* challenging the order of the Bankruptcy Court, the court concludes that their time for filing an election is governed by § 158(c)(1)(A) rather than § 158(c)(1)(B).  Although the references in § 158(c)(1) to "the appellant" and "any other party" could be construed to mean the *first* appellant, on the one hand, and every other party (including

---

[2] In *In re King*, 235 B.R. 658 (10th Cir. BAP 1999), the court held that the "service of notice" triggering the 30-day period in § 158(c)(1)(B) was service of notice by the clerk of the bankruptcy court under Bankr. R. 8004.

7

other appellants) on the other, the case law addressing the issue construes "the appellant" as applying to any party who files a notice of appeal challenging the lower court's ruling. *See In re Snell*, 237 B.R. 636, 638 (6th Cir. BAP 1999) (cross-appellants are not "other parties" who are given 30 days by subsection (B); pursuant to subsection (A) they must file election at the time their cross-appeal is filed). *But cf.* Bankr.R. 8002("If a timely notice of appeal is filed by a party, *any other party* may file a notice of appeal within 10 days of the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this rule, whichever period last expires.") (emphasis added). Although it is possible to construe the statute otherwise, the court concludes that *In Re Snell* constitutes the better view, with the term "the appellant" meaning any party who files a notice of appeal challenging the bankruptcy court's ruling. To limit the term to only the first appellant would effectively insert a restriction that does not appear in the statute. As such, the court concludes that election filed by the Interveners together with their Notice of Appeal was timely under § 158(c)(1)(A).

    B.  *Standing to Prosecute Appeal*.

The party invoking federal jurisdiction – in this case the appellant Interveners – bear the burden of establishing their standing. *In re Novak*, 92 Fed.Appx. 680 (10th Cir. 2004) (*citing Weinman v. Fid. Capital Appreciation Fund* (*In re Integra Realty Res., Inc*.), 262 F.3d 1089, 1101-02 (10th Cir.2001)). The appellants must show an injury in fact personal to themselves. *Hinkson v. Pfleiderer*, 729 F.2d 697, 700 (10th Cir.1984).

In asserting that they have standing to pursue the appeal, the Interveners contend they have "enforceable rights in [the] entities" effected by the Bankruptcy Court's order. They contend that PHC, LLC was the separate property of the various Children's Trusts, and was

created for the purpose of holding title to the real property held in trust for the interveners, so that it could enter into a tax-free exchange for a new residence for the interveners.  Interveners contend that the Bankruptcy Court's freeze order prevented consummation of the tax-free exchange.  Interveners contend that although PHC, LLC thus holds legal title to the Oneida property, equitable title is held by the various Children's Trusts.  The Interveners claim the Oneida residence is their homestead and that they have "standing to protect their homestead rights in the Oneida residence."

In allowing the Krause children to intervene in the adversary proceeding, the Bankruptcy Court correctly noted that "where the validity of the trusts, of which they are sole beneficiaries, is the core issue, their interests are clearly at stake."  The Trustee argues this may be true with respect to the various Children's Trusts, but not with regard to the trusts and entities effected by the sanctions order, as to which the Bankruptcy Court found the Interveners are "no more than contingent remainder beneficiaries...."  At this stage, where none of the merits of the "alter ego" or "sham trust" claims have been decided, and the Interveners have at least made a colorable allegation that they have enforceable equitable rights in the trusts effected by the order, the court concludes that the Interveners have made a sufficient showing that they have standing to seek an appeal of the ruling.

    C. *Jurisdiction Under § 158(a)*.

Section 158(a) provides in part that the district courts of the United States have jurisdiction to hear appeals "from final judgments, orders, and decrees" of bankruptcy courts.  Generally, an order is considered final only if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  *Adelman v. Fourth Nat'l. Bank & Trust* (

*In re Durability, Inc*.), 893 F.2d 264, 265 (10th Cir.1990).  The "appropriate judicial unit" for application of the finality requirement in bankruptcy, however, is not the overall case, but rather the "particular adversary proceeding or discrete controversy pursued within the broader framework cast by the petition." *Id*. at 266.  *See also Greyhound Lines, Inc. v. Rogers* (*In re Eagle Bus Mfg*.), 62 F.3d 730, 733 (5th Cir.1995) ( "Finality in bankruptcy is contingent upon the conclusion of an adversarial proceeding within the bankruptcy case, rather than the conclusion of the entire litigation.").  Even under this somewhat flexible standard, the sanctions order of the bankruptcy court cannot be considered a "final order."  The ruling pertains only to certain portions of the adversary complaints, leaving the remaining claims to be determined, presumably after a trial on the merits in the Bankruptcy Court.

The Interveners rely partially on the "collateral order doctrine" as a basis for appellate jurisdiction.  That doctrine provides that certain orders may be appealed, notwithstanding the absence of final judgment, when they "are conclusive, ... resolve important questions separate from the merits, and ... are effectively unreviewable on appeal from the final judgment in the underlying action."  *Cunningham v. Hamilton County, Ohio*, 527 U.S. 198, 202 (1999).  The court concludes, however, that the prerequisites of the collateral order doctrine are not satisfied.  Notwithstanding the Interveners' contentions, the sanctions order in this case is subject to ongoing review by the Bankruptcy Court and may be altered or amended as the interests of justice require.  For example, in denying the Interveners' motion for reconsideration, the Bankruptcy Court noted that debtor Gary Krause had complied with most of the sanctions ordered by the court, such that the Bankruptcy Court was "not inclined to effectuate the second tier of sanctions contained in the June 14 Sanctions Order pending the trial on the merits of the

remaining claims." (Adv. Doc. 377 at p.7, n.18.). Interveners also complain that they have homestead rights that will be irretrievably harmed if an immediate appeal is not granted, but the court notes that the debtor, in response to the Bankruptcy Court's ruling, has recently filed a notice provisionally claiming a homestead exemption. (Adv. Doc. 386). Such a claim, if successful, could render moot Interveners' allegations of irreparable harm. Moreover, the court cannot find that the sanctions order is completely separate from the merits of the case. Interveners' claims of equitable and legal rights in the subject trusts would inevitably involve this court in the merits of the dispute between the debtor and the Trustee on the pending adversary complaint. In sum, the court concludes that the sanction order is not appealable under the collateral order doctrine.

Section 158(a)(3) permits a district court to hear appeals from interlocutory orders of the bankruptcy court. Even construing Interveners' appeal as an application for leave to appeal an interlocutory order, the court concludes that a permissive appeal is not warranted in this matter. The district court has discretion to grant leave to appeal an interlocutory order, but generally speaking such appeals "should be granted with discrimination and reserved for cases of exceptional circumstances." *In re Kester*, 2006 WL 2540393, *1 (D. Kan., Jan. 13, 2006) (*citing In re Midgard Corp.*, 204 B.R. 764, 769 (10th Cir. BAP 1997). The courts ordinarily apply the standards of 28 U.S.C. § 1292(b) in determining the issue. Thus, the court may certify an interlocutory appeal when (1) a controlling issue of law is involved; (2) termination of the litigation may be materially advanced by an immediate appeal; and (3) a substantial ground for difference of opinion exists regarding the legal question. *Kester*, supra.

Whatever else might be said about application of these factors to the circumstances at

hand, the court is not persuaded that an immediate appeal will materially advance the litigation. In fact, quite the opposite is likely true. The sanction order in this case was the result of what the Bankruptcy Court found was essentially a pattern of obstruction by the debtor. As noted above, the Bankruptcy Court observed in its order denying reconsideration that the debtor has now commenced compliance with his discovery obligations, which will allow the litigation to move forward. An interlocutory appeal by the Interveners at this point will not move the litigation forward, but would derail the proceedings, and entangle this court in the merits of the Trustee's allegations that the trusts in dispute are nominees or alter egos of the debtor, as well at the debtor's claim that if the Trustee's allegations are correct, then he is entitled to assert the homestead exemption.

IV. Conclusion.

The Trustee's Motion to Dismiss for Lack of Jurisdiction (Doc. 2) is GRANTED. The appeal is hereby DISMISSED without prejudice for lack of jurisdiction.

The Appellants' Motion for Stay of Execution of Sanctions Judgment (Doc. 5) is DENIED as moot.

IT IS SO ORDERED this   5th   Day of September, 2007, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge